IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Ambassador Press, Inc., | Case No. 17-cv-04557-JNE-SER |
| Plaintiff, | |
| v. | |
| Durst Image Technology U.S., LLC, | **PLAINTIFF AMBASSADOR PRESS, INC.'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT** |
| Defendant. | |

## INTRODUCTION

In moving to dismiss this action a second time, Durst ignores the significant content added in Ambassador's Amended Complaint. The Amended Complaint asserts a fraud claim. It states that Ambassador would not have bought Durst's Rho 1012 printer, *but for* Durst's misrepresentations about (1) the printer's speed capabilities and (2) the infrequency with which the printer's print heads would need replacement. The Amended Complaint then details the extensive costs and losses Ambassador suffered because it bought Durst's printer—which turned out not to have the speed capabilities and print-head characteristics that Durst said it did.

Ignoring this new content—especially with respect to Durst's misrepresentations about the printer's speed—Durst recycles arguments from its first motion to dismiss. Durst again contends that the Amended Complaint does not

meet the pleading requirements for "plausibility" and "particularity." But Durst's lone "plausibility" argument does not support dismissal. The argument only targets certain allegations about print-head replacement rates. And it also relies on mischaracterizing two emails referenced in the Amended Complaint as well as a specious claim about causation.

Although Durst advances four arguments about the particularity requirement, all fail. First, Durst asserts that Ambassador has not pled reliance with particularity. But the law confirms that detrimental reliance is adequately pled by an allegation—like the one in the Amended Complaint—that a plaintiff would not have bought a product, but for a misrepresentation. Second, Durst claims that allegations about a meeting in Austria are not specific, because only one participant was identified. But the Amended Complaint provides enough detail for Durst to identify the others. That is all the law requires. Third, Durst contends that the Amended Complaint does not provide the basis for Ambassador's belief that Durst's representations were not true. But Durst tries to apply inapplicable statutory standards from the securities litigation context to make its argument. And even if those requirements applied here, the complaint reflects that Ambassador's own

experience—which deviated radically from Durst's representations—is sufficient evidence that Durst lied.

Fourth, and finally, Durst contends that its false representations were nonactionable puffery. They weren't. The misrepresentations at issue include multiple specific statements, capable of being proven wrong. For example, with respect to speed, Durst said "[t]he 1012 would be at least 50% faster" than Ambassador's HP printer and "the 1012 is the fastest 12 picoliter 1000 dpi printer on the market." Durst also described the printer's speed in square feet per hour and boards per hour. As for the print heads, Durst stated that "the worst case scenario" of which it knew was "one unit with 6 replacements at the end of two years" due to poor maintenance and mechanical failures. Durst also provided replacement numbers that did not exceed two for the other "presses with more then (sic) 1 year in service" of which it was aware. Ambassador alleges that these statements were false.

Durst's motion to dismiss thus relies on inventing pleading standards, mischaracterizing the allegations in the Amended Complaint, and attacking some of Ambassador's allegations, but not addressing others. But the law is clear that for a fraud claim, "it is not the case that each allegation in the [c]omplaint need be actionable." *OrthoAccel Tech., Inc. v. Devicix, LLC*, No. 15-1503, 2015 WL 4563134, at

*4 (D. Minn. July 29, 2015). Rather—as Ambassador's Amended Complaint undeniably does—"the allegations as a whole must support a claim." *See id.*

Durst's motion to dismiss should be denied.

## BACKGROUND

**A. Ambassador considers buying a printer from Durst, but only wants the printer if it is fast and does not require frequent print head replacement.**

Ambassador is a Minneapolis printing company.[1] Durst makes, sells, and services large-scale, industrial printers. In or about March 2013, Ambassador began communicating with Durst representatives about purchasing one of its Rho 1012 printers ("the Printer").[2] In deciding whether to buy the Printer, Ambassador identified two characteristics that were important to it: (1) the Printer's speed, and (2) the frequency with which its print heads would need to be replaced.[3] The Amended Complaint explains that Ambassador cared about the Printer's speed "because a slow printer reduces printing capacity and thereby reduces revenues and profits."[4] The replacement rate for print heads mattered to Ambassador "because the Printer included 64 individual print heads with each new head costing a quoted

---

[1] ECF Docket No. 36, Am. Compl. ¶ 1.

[2] *Id.* ¶¶ 4-5.

[3] *Id.* ¶¶ 7, 9.

[4] *Id.* ¶ 9.

price of $12,990, if replacement proved necessary."[5] Replacing all the Printer's print heads just once could potentially cost nearly a million dollars.

**B.  Durst convinces Ambassador to buy the Printer by specifically assuring Ambassador that the Printer is fast and its print heads rarely need replacing.**

Over the next few months, to convince Ambassador to buy the Printer, Durst made various representations about it. To address Ambassador's specific concerns, Durst repeatedly touted the Printer's fast speed and assured Ambassador that the print heads rarely failed.[6] Durst did so in email communications with Ambassador and in product documentation it gave Ambassador.[7] Durst representatives also made representations in person, when Ambassador representatives met with Dave Gleiter, Durst's Regional Sales Manager, and others during a May 22, 2013, visit to Durst's headquarters in Lienz, Austria.[8]

The Amended Complaint identifies the following specific misrepresentations about the Printer's speed:

- An April 12, 2013 email from Mr. Gleiter stating that "[t]he 1012 would be at least 50% faster then [sic] your HP…";

- A chart sent by Mr. Gleiter on May 13, 2013, providing a "General Overview of Speeds" that spelt out particular levels of print output in square feet per hour;

---

[5] *Id.* ¶ 7.

[6] *Id.* ¶¶ 8, 10.

[7] *See id.*

[8] *Id.*

- A written list provided to Ambassador on May 14, 2013 specifying the Printer's output capability in measurable terms of the number of boards per hour that could be printed for various materials;

- A June 25, 2013 email from Mr. Gleiter representing that "the 1012 is the fastest 12 picoliter 1000 dpi printer on the market."[9]

And the Amended Complaint identifies the following specific misrepresentations about print head failure rates:

- A May 15, 2013 email from Mr. Gleiter providing Ambassador with "needed information on possible operating costs out of warranty" that

  ➢ stated "we have had a low failure rate of heads out of warranty";

  ➢ listed replacements for "presses with more than 1 year in service" that it knew of as

    **unit 1**: no replacements
    **units 2 and 3**: 1 replacement
    **units 4, 5, 6**: 2 replacements

  and described the "the worst case scenario," of which it knew as "one unit with 6 replacements at the end of two years, 2 due to mechanical failure [and] the others due to poor cleaning habits";

- Statements by Mr. Gleiter and other Durst employees during Ambassador's May 22, 2013 visit to Durst's headquarters in Lienz, Austria, including that the print heads "last longer than other print heads, rarely fail, and rarely require replacement";

- A July 1, 2013 email from Durst representing that "[w]e have some customers with many years of operation without head replacement and others with minor but varying degree of head replacements mostly due to

---

[9] *Id.* ¶ 10.

preventative maintenance procedures and in some cases poor operator practices..."[10]

Based on these and the other representations by Durst, described in the Amended Complaint, Ambassador purchased the Printer on July 12, 2013.[11] As the Amended Complaint emphasizes "Ambassador would not have purchased the Printer, the Service Plan, or the two-year warranty, but for the Fraudulent Misrepresentations."[12]

### C. Based on its experience of the Printer's speed and head replacement rates, Ambassador realizes Durst's representations were false.

Ambassador's experience with the Printer led Ambassador to realize that Durst's representations about speed and print head failures "were not true."[13] As described in the Amended Complaint, the rate at which the print heads of Ambassador's Printer have needed replacing far exceeds the expected numbers provided by Durst. During the first three years, Durst hid the true number of Ambassador's print-head replacements.[14] In March 2017, Ambassador asked Durst how many heads had been replaced. Durst represented that it had replaced 19

---

[10] *Id.* ¶ 8.

[11] *Id.* ¶ 13.

[12] *Id.* ¶¶ 14, 20.

[13] *Id.* ¶ 12.

[14] *Id.* ¶ 15.

heads.[15] But a Durst repair employee has since confirmed that Durst actually replaced 28 print heads in the three-year period.[16] Moreover, as of the filing of this action, Ambassador has had to replace 54 print heads.[17] And the print heads are continuing to fail at an alarming rate.

The Printer has also "never functioned or achieved the speeds" that Durst represented it would.[18] When Ambassador raised concerns, Durst repeatedly responded by recommending that more print heads be replaced.[19] Replacing of print heads, however, has not solved the performance and speed problems that Ambassador has consistently experienced.[20]

**D. Ambassador's purchase of the Printer results in major expenditures and losses.**

As described in the Amended Complaint, Ambassador suffered significant damages because it purchased the Printer—an action it would not have taken *but for* Durst's misrepresentations. For example, at the time of filing the complaint,

---

[15] *Id.*

[16] *Id.*

[17] *Id.* ¶ 16.

[18] *Id.*

[19] Durst now claims that Ambassador's maintenance practices caused print head failures, but Durst did not raise these concerns prior to Ambassador's claim of fraud. To the contrary, Durst representatives assured Ambassador that its maintenance practices were not the cause of its problems.

[20] *Id.*

8

Ambassador had paid $260,000 for the 43 print heads that were replaced after Durst's warranty ended.[21] Ambassador also experienced major problems with the Printer, including "overheating and failing ink, improperly functioning feed rollers, multiple belt replacements, inconsistent banding issues, software issues, lamp failure (specifically the replacement of UV housing units), and encoder and oiler issues."[22]

The Printer problems have resulted in tremendous additional costs for Ambassador because it purchased the Printer. "The Printer is frequently out of commission; when it does work, it isn't anywhere near as fast as advertised; it causes significant material spoilage; it increases Ambassador's labor costs (with both employee downtime and overtime expenses); it forces Ambassador to incur extra shipping costs to minimize the impact of project delays; and—most significantly— it has caused Ambassador to lose [print] jobs."[23]

**E. Ambassador files the present suit and Durst twice seeks to dismiss it.**

To seek redress for the extensive harm caused by Durst's misrepresentations, Ambassador filed a complaint in Hennepin County District Court on September 20,

---

[21] *Id.* ¶ 18.

[22] *Id*. ¶ 19.

[23] *Id*.

2017.[24] Durst removed the action to federal court on October 5, 2017.[25] Durst filed a motion to dismiss Ambassador's initial complaint.[26] With respect to Ambassador's common-law fraud claim, the Court noted the difference in pleading standards between state and federal court[27] and took Ambassador's fraud claim under advisement.

Ambassador then obtained permission to amend its complaint, with Durst stipulating to Ambassador's Amended Complaint.[28] Ambassador filed the Amended Complaint on March 27, 2018. The Amended Complaint added significant new content, including additional detail about Durst's misrepresentations, including the Printer's speed.[29]

Durst now seeks to dismiss the Amended Complaint. In doing so, Durst ignores Ambassador's new allegations and simply recycles the same arguments it made with respect to Ambassador's original Complaint. As discussed below, none of them warrant dismissal of the Amended Complaint.

---

[24] ECF Docket No. 1 (Ex. 1-1).

[25] ECF Docket No. 1.

[26] ECF Docket No. 12.

[27] ECF Docket No. 39 at 32.

[28] ECF Docket No. 35.

[29] *See* ECF Docket No. 32, Ex. B.

## ARGUMENT

Ambassador's Amended Complaint is well pled. And while Durst moves to dismiss the Amended Complaint alleging that it does not meet the pleading standards for "plausibility" and "particularity,"[30] it cannot succeed. First, Durst raises a limited plausibility challenge, directed solely at Ambassador's allegations relating to the print-head replacement rate. That challenge fails because it mischaracterizes two emails mentioned in the Amended Complaint and advances a faulty argument regarding causation. Second, Durst advances four arguments about particularity. Each one either misapprehends the applicable pleading standard or narrowly focuses on some allegations while ignoring the rest of them. None of Durst's arguments warrant dismissal of the Amended Complaint.

### A.    Durst's limited challenge based on "plausibility" fails because Durst mischaracterizes two emails and makes a specious causation argument.

The Amended Complaint includes more than enough factual content to render Ambassador's fraud claim plausible. *See Hoyt Props., Inc. v. Prod. Resource Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007) (describing the elements of a fraud claim). To overcome a plausibility challenge on a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations

---

[30] Durst Br. at 1.

omitted). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In ruling on a Rule 12(b)(6) motion, a court accepts "the facts alleged in the complaint as true" and grants "all reasonable inferences in favor of the" plaintiff. *Mulvenon v. Greenwood*, 643 F.3d 653, 656 (8th Cir. 2011).

Durst does not raise a "plausibility" objection to Ambassador's fraud claim to the extent the claim is based on Durst's misrepresentations about the Printer's speed. Accordingly, those misrepresentations could independently support Ambassador's fraud claim. Moreover, as discussed below, all of Durst's "particularity" objections fail. Thus, Ambassador would be entitled to go forward with its fraud claim based on Durst's misrepresentations about the Printer speed alone. But Ambassador does not need to because Durst's arguments about the print head representations do not support dismissal.

With respect to Durst's misrepresentations about the need to replace print heads, Durst contends that the July 1, 2013 and May 15, 2013 emails on which Ambassador relies "fatally undermine a fraud claim."[31] Although Durst's precise concern is not entirely clear, Durst seems to be advancing two arguments. Both fail.

---

[31] Durst Br. at 8-11.

1. <u>Durst misrepresents the content of the July 1, 2013 email to claim it states no actionable misrepresentation</u>

With respect to the July 1, 2013 email, Durst contends that it made no "misrepresentations as to print heads."[32] Durst alleges that "the email makes it abundantly clear there are too many factors at work to determine the life expectancy or failure rate of print heads."[33]

But that is not what the email says.

While the email does say "life expectancy has many factors among them preventative maintenance, total volume, activity levels. etc.," it then elaborates—in the same paragraph—by stating that "[w]e have some customers with many years of operation without head replacement and others with minor but varying degree of head replacements *mostly* due to preventative maintenance procedures *and in some cases* poor operator practices..."[34] (Emphasis added.) Thus, the email represents that Durst's customers have had either (a) many years without head replacement, or (b) minor (but varying within that minor category) degree of replacements due either to "preventative maintenance procedures" (most cases) or "poor operator practices" (some cases). This description of Durst's customers' experiences is a statement about a past fact, "susceptible of knowledge." *See Hoyt*, 736 N.W.2d at 318.

---

[32] *Id*. at 9.

[33] *Id*.

[34] ECF Docket 16, Ex. 1 at 1.

13

Durst might dispute that its representation covered all its customers. In other words, Durst might say that there is no misrepresentation because its statement leaves open the possibility that there is a category (c) of customers who have had neither no replacements nor a "minor degree" of replacements. But if that were the case, Durst's actions would amount to "fraudulent nondisclosure" on the theory that "[o]ne who speaks must say enough to prevent his words from misleading the other party" or "[o]ne who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party." *See Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1074 (D. Minn. 2013) (internal quotation marks omitted). The Amended Complaint thus reflects an actionable misrepresentation, or alternatively a fraudulent nondisclosure, with respect to the July 1, 2013 email.

2.  Durst makes a factually incorrect and specious causation argument about the May 15, 2013 email

As to the May 15, 2013 email, Durst attempts to construct some type of a causation or "nexus" argument.[35] Durst argues that to the extent it made any representations in this email, they pertained only to the first two years of a printer's life. But, according to Durst, Ambassador's damages resulted from replacement costs it incurred between the third and fifth year of owning the Printer. Thus, Durst

---

[35] Durst Br. at 9-11.

14

contends, there is no connection between the misrepresentations about replacement rates in the May 15, 2013 email and Ambassador's damages.

As an initial matter, it is not factually correct that the representations about head replacement rates in the May 15, 2013 email pertained only to the first two years of the Printer's life. Nowhere in the email does it say, as Durst contends in its brief, that the figures were for "past performance of those 14 printers which had been in service for more than one year, but less than two."[36] Rather, the email explicitly states "we have had a low failure rate of heads out of warranty"—which was two years for Ambassador—and then provides statistics for seven "presses with more th[a]n 1 year in service."[37] But more than one year, certainly could be any number of years and not just between one and two years, as Durst contends. Moreover, the email also states that it was providing "the needed information on possible operating costs out of warranty."[38]

At any rate, even if the email did state that its statistics were only for the first two years of the Printer's life (it doesn't), Durst's argument rests on a false premise. Durst wrongly assumes that there can be no connection between a misrepresentation about replacement rate in the first two years and Ambassador's

---

[36] ECF Docket No. 16, Ex. 2; Durst Br. at 10.

[37] ECF Docket No. 16, Ex. 2.

[38] *Id.*

damages in subsequent years. Ambassador bought the Printer because of the misrepresentations about the replacement rate, including the rate for the first two years of the printer's life. For example, one of the misrepresentations stated in the Amended Complaint is the statement in the May 15, 2013 email that "the worst case scenario" Durst knew of was "6 replacements at the end of two years, 2 due to mechanical failure [and] the others due to poor cleaning habits."[39] That statement is one of the representations that the Amended Complaint says was false. It also was one of the statements, but for which, Ambassador would not have bought the Printer.

In other words, if Ambassador had known the truth about "the worst case scenario" in the first two years, it would not have bought the Printer. It would then have avoided all its claimed losses, including those from the third to fifth year. Thus, Durst's actual misrepresentation about the first two years—as well as the statistics it contends pertain to the first two years only—caused the damage Ambassador experienced, including in years three to five.

**B.    Durst's "particularity" arguments invent pleading standards and ignore content in the Amended Complaint that meets the particularity standards.**

Ambassador's Amended Complaint satisfies the requirement of pleading fraud with particularity. To meet the particularity requirement of Rule 9(b), a

---

[39] Am. Compl. ¶ 8.

complaint for fraud must allege "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citations omitted); Fed. R. Civ. P. 9(b). This standard generally requires a party to identify the "who, what, where, when, and how" of the alleged fraud. *Id.* It is designed to enable defendants to respond "specifically, at an early stage of the case to potentially damaging allegations." *Id.*

But for a fraud claim, "it is not the case that each allegation in the [c]omplaint need be actionable." *OrthoAccel Tech.*, 2015 WL 4563134, at *4. Rather "the allegations as a whole must support a claim." *Id.* Thus, even though a particular allegation, taken alone, may fail the particularity test, the relevant inquiry on a motion to dismiss is whether the complaint "analyzed as a whole, adequately puts the defendant on notice of the particular instances of misrepresentation claimed by the plaintiff." *Id.* (citations omitted); *McGregor v. Uponor, Inc.*, No. 09-1136, 2010 WL 55985, at *3 (D. Minn. Jan. 4, 2010) ("Rule 9(b) does not require that the exact particulars of every instance of fraud be alleged, so long as the complaint includes enough detail to inform the defendant of the 'core' factual basis for the fraud claims.").

Durst makes four arguments about particularity. All must be rejected.

1.  <u>Durst is wrong in claiming insufficient particularity with respect to reliance because Ambassador adequately pleads it would not have bought the Printer, but for Durst's misrepresentations</u>

Durst contends that the Amended Complaint does not allege reliance with sufficient particularity.[40] But the Amended Complaint clearly alleges that "Ambassador would not have purchased the Printer, Durst's Service Plan, or the two-year warranty but for the Fraudulent Misrepresentations."[41] And it is well established that purchasing a product that would not have been otherwise purchased adequately pleads reliance. *See, e.g., Block v. Toyota Motor Corp.*, 795 F. Supp. 2d 880, 890 (D. Minn. 2011); *Tracton v. Viva Labs, Inc.*, No.: 16-cv-2772, 2017 WL 4125053, at *5 (S.D. Cal. Sep. 18, 2017) ("It is enough for a plaintiff to plead that she would not have purchased the product absent the misleading advertising."); *Johnston v. PhD Fitness, LLC*, No. 16-cv-14152, 2018 WL 646683, at *5 (E.D. Mich. Jan. 31, 2018) (finding that plaintiff pled justifiable reliance by alleging that he read representations on product's label and purchased them based on the representations).

Durst relies on *Stumm v. BAC Home Loans Servicing, LP*, 914 F. Supp. 2d 1009 (D. Minn. 2012), to argue that the Amended Complaint needed to do more. But the facts at issue in *Stumm* are inapposite. In *Stumm*, the plaintiff homeowners sued a

---

[40] Durst Br. at 11-12.

[41] Am. Compl. ¶¶ 14, 20.

18

bank for fraud. 914 F. Supp. 2d at 1012. The plaintiffs alleged that the bank told them, a week before a scheduled foreclosure sale of their property, that the sale would be postponed. *Id.* But then the foreclosure went forward on schedule. *Id.*

The *Stumm* court found that detrimental reliance had not been adequately pled. *Id.* at 1014-15. In particular, the plaintiffs failed to allege how they could have taken an alternative course of action to avoid the foreclosure—an event they did not control—had they known it would still happen in a week. *See id.* The plaintiffs had alleged that they would have explored other alternatives to foreclosure. *Id.* But the court observed that they had not pled facts showing "that any of these 'alternatives' were actually available to them." *Id.* In other words, the plaintiffs had not shown that they could have done anything to avoid their loss, i.e. the foreclosure, had they known that the representation at issue was false.

The scenario here differs materially. Unlike in *Stumm*, where it was not apparent that the plaintiffs had any alternative, Ambassador's available alternative is readily apparent. In fact it is explicit in the Amended Complaint's statement of reliance—the alternative was that "Ambassador would not have purchased the Printer, Durst's Service Plan, or the two-year warranty."[42] Moreover, the Amended Complaint details the extensive costs incurred by Ambassador because of its purchase, including $260,000 for replacement print heads (at the time of filing), as

---

[42] Am. Compl. ¶ 14.

well as pecuniary losses for material spoilage, employee downtime, extra shipping, project delays, and lost print jobs.[43] Detrimental reliance is adequately pled.

2. <u>Durst's objections to the Amended Complaint's Austria disclosure should be disregarded, because the Amended Complaint provides adequate detail</u>

Durst contends that Ambassador's allegations about misrepresentations during Ambassador's visit to Austria do not meet the particularity requirement. The Amended Complaint states that during "a May 22, 2013 visit to Durst's headquarters in Lienz, Austria, Mr. Gleiter and other Durst employees" made certain misrepresentations.[44] Earlier, the complaint identified "Mr. Gleiter" as "Dave Gleiter, Regional Sales Manager."[45] Durst's particularity objection is that the Amended Complaint does not identify the "other Durst employees" who accompanied Mr. Gleiter and the individuals to whom the representations were made.[46]

The law only requires identification of "such matters as the time, place and contents of false representations, as well as the identity ***of the person making the misrepresentation*** and what was obtained or given up thereby." *Abels v. Farmers Commodities Corp.*, 259 F. 3d 910, 920 (8th Cir. 2001) (emphasis added). The purpose "is to ensure that a defendant can adequately respond and prepare a defense

---

[43] *Id.* ¶ 19.

[44] *Id.* ¶¶ 8, 10.

[45] *Id.* ¶ 8.

[46] Durst Br. 13-14.

to charges of fraud." *United States ex rel. Scharber v. Golden Gate Nat'l Senior Care LLC*, 135 F. Supp. 3d 944, 957 (D. Minn. 2015). Thus, specifically naming an employee who made an allegedly fraudulent statement is not necessary if the complaint provides sufficient facts to allow the employer to identify the employee. *Stumm*, 914 F. Supp. 2d at 1013–14.

The Amended Complaint identifies the date and place of the meeting. It identifies Mr. Gleiter as a Durst participant. The Amended Complaint also reflects that Mr. Gleiter served as a key point of contact for Ambassador. The information suffices to provide Durst the detail needed to identify any other employees or participants that it wants. Durst does not have a credible argument on particularity relating to the Austria meeting.

3. Even though it does not have to, the Amended Complaint reflects the basis for Ambassador's belief that Durst lied —Ambassador's own experience

Durst next argues that the Amended Complaint does not meet the particularity requirement "by failing to allege the source of the information and the basis for [Ambassador's] belief" in the falsity of Durst's representations about the Printer.[47] Durst cites *Parnes v. Gateway 2000, Inc*., 122 F.3d 539, 549 (8th Cir. 1997) for the supposed requirement that Ambassador needed to set out the source of its information and the basis for its belief.[48] But *Parnes* was a securities fraud case. *See*

---

[47] Durst Br. at 14-15.

[48] *Id*.

*Parnes*, 122 F.3d at 549 (describing the particularity requirement "[i]n the context of securities litigation"). And "[t]he Private Securities Litigation Reform Act ("PSLRA") imposes heightened pleading standards in securities-fraud cases." *In re Stratasys Ltd. Shareholder Sec. Litig.*, 864 F.3d 879, 882 (8th Cir. 2017). More specifically, the PSLRA requires a securities plaintiff to "plead falsity by specifying each allegedly misleading statement and the reasons why each statement is misleading," and "[i]f falsity is alleged based upon information and belief, the complaint must state with particularity all facts on which the belief is formed." *In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079, 1083 (8th Cir.2005) (citing 15 U.S.C. § 78u–4(b)(1)). Since this is not a securities case, the requirements cited by Durst do not apply.

Ambassador's Amended Complaint meets the applicable particularity requirements. The Amended Complaint does not conclusorily allege that Durst's "conduct was fraudulent and deceptive," but provides the required details of the "who, what, where, when, and how" of Durst's fraud. *See BJC Health Sys.*, 478 F.3d at 917. As to the falsity of Durst's representations about the Printer speed and print head replacement rate, the Amended Complaint alleges that the "Fraudulent Misrepresentations were not true."[49] It then goes on to allege "[f]or example, and on information and belief, Ambassador alleges that, at the time Durst made the Fraudulent Misrepresentations, it knew that: (a) the Rho 1012 was experiencing

---

[49] Am. Compl. ¶ 12.

significant print head problems; (b) the Rho 1012 was experiencing significant speed problems; and (c) the Fraudulent Representations were not true."[50] Nothing further is required.

Nonetheless, even if the securities litigation standards applied, the Amended Complaint provides the basis for Ambassador's belief in the falsity of Durst's representations—Ambassador's own experience with the Printer. Durst claims that the representations about the Printer's speed in the Amended Complaint are so technical that the complaint does not adequately "show how those figures and highly technical specifications are false."[51] But Durst cannot credibly maintain that it (or the Court) cannot understand representations such as "[t]he 1012 would be at least 50% faster" than Ambassador's HP printer or a print speed measured in "Sq/ft/hr" or "boards per hour." When the Amended Complaint alleges that the "Printer has never functioned or achieved the speeds as promised,"[52] it states as a factual matter—which must be accepted as true—that the Printer was not 50% faster than Ambassador's HP and did not print at the particular speeds designated in square feet per hour or boards per hour. And, of course, Ambassador knows this—it is undisputed that Ambassador has access to and is operating the printer.

---

[50] *Id.*

[51] Durst Br. at 14-15.

[52] *f*Am. Compl. ¶ 16.

Similarly, with respect to the need for replacing print heads, the Amended Complaint shows that the basis for Ambassador's belief in the falsity of Durst's representations was Ambassador's experience. The Amended Complaint states that 28 heads had been replaced on Ambassador's Printer in its first three years and 54 heads had been replaced by the filing of the complaint.[53] The vast discrepancy between Ambassador's experience and Durst's representations about the rates of replacement others supposedly experienced formed the basis for Ambassador's belief that Durst had to have been lying. In addition, Durst's concealment—described in the Amended Complaint—of the actual number of heads that Ambassador needed to replace in the first three years also provides a basis for Ambassador's belief that Durst was trying to hide its earlier misrepresentations.

Durst's real grievance seems to be that the Amended Complaint does not *prove* the falsity of its representations. But of course, a complaint does not need to do that to survive a Rule 12(b)(6) motion. Durst's objection is baseless.

4. <u>Durst wrongly claims that its representations are mere "puffery," because the Amended Complaint points to specific and verifiable statements</u>

Durst lastly picks out a few allegations of the Amended Complaint to argue that Ambassador has not met Rule 9(b)'s standards because Durst's representations are supposedly nonactionable "puffery."[54] But "puffery" refers to a limited category

---

[53] *Id*. ¶¶ 15-16.

[54] Durst Br., 15-16.

of statements. "Puffery exists in two general forms: (1) exaggerated statements of bluster or boast upon which no reasonable consumer would rely; and (2) vague or highly subjective claims of product superiority, including bald assertions of superiority." *Laughlin v. Target Corp.*, No. 12–489, 2012 WL 3065551, at *2 (D. Minn. July 27, 2012) (quoting *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390-91 (8th Cir. 2004)).

Accordingly, "false descriptions of specific or absolute characteristics of a product" are not puffery. *Id.* (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998)). And a statement is actionable if it is a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Am. Italian* Pasta, 371 F.3d at 391 (internal quotation marks omitted).

Ambassador's fraud claim is based on specific descriptions of the Printer that are not puffery. For example, with respect to the Printer speed, Durst's representations about the printer output in terms of square feet or boards per hour are measurable and capable of being proven false. So are Durst's statements that the Printer would be 50% faster than Ambassador's existing HP printer and that "the 1012 is the fastest 12 picoliter 1000 dpi printer on the market." *See e.g., Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (description of turfgrass as requiring "50% Less Mowing" was "a specific and measurable

advertisement claim of product superiority"); *Walter v. Hughes Communs., Inc.*, 682 F. Supp. 2d 1031, 1034-35, 1043-44 (N.D. Cal. 2010) (advertisements of high data speed and transfer rates by broadband internet service were not puffery and were actionable where rates experienced by plaintiffs fell short); *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993) (representation that motor oil was superior in preventing viscosity breakdown, which provided "better engine protection," was not puffery, but "specific and measurable by comparative research").

Similarly, Durst's statements about the low frequency with which the Printer required replacement of print heads are actionable. The representation that the "worst case scenario" Durst knew of was "6 replacements at the end of two years" can be proven false. Durst's representation that it has "had a low failure rate of heads out of warranty" is also a statement of objective fact. That is especially so, in the context of an email that provides the relevant range for gauging "low." *See Am. Italian Pasta*, 371 F.3d at 391 (explaining that the context may transform an ambiguous phrase into a statement of fact). Durst's May 15, 2013 email provides significant context when it describes the "low" numbers it has experienced for "presses with more than 1 year in service" as two or less replacements with one outlier of six, due to poor maintenance or mechanical issues.

The statements on which Ambassador relies are a far cry from the types of "generalized expressions regarding 'high quality' or being the 'best' in the market"

26

that have been deemed nonactionable puffery. *See OrthoAccel Tech.*, 2015 WL 4563134, at *4 (finding product specifications involving product life and battery life actionable). Durst's puffery argument does not provide a basis for dismissal.

**CONCLUSION**

Ambassador has stated a fraud claim. In reliance on Durst's representations regarding the printer's speed and print-head failure rate, it purchased a printer. Ambassador emphasized to Durst that it was relying on Durst's representations. And Ambassador learned that these representations were false. Indeed, its own experience confirmed that the printer could not achieve the promised speeds and that Durst's representations regarding print heads could not have been true. The common law permits a fraud claim to stand in these circumstances. For all these reasons, Ambassador asks the Court to deny Durst's motion to dismiss.

Dated:  May 1, 2018                    **GREENE ESPEL PLLP**

/s/ Lawrence M. Shapiro
Lawrence M. Shapiro, P.A., Reg. No. 130886
Sybil Dunlop, Reg. No. 390186
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
lshapiro@greeneespel.com
sdunlop@greeneespel.com

*Attorneys for Ambassador Press, Inc.*