UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ambassador Press, Inc.,

     Plaintiff,

                                Case No. 17-cv-4557 (JNE/SER)

v.

                                ORDER

Durst Image Technology U.S., LLC,

     Defendant.

This matter is before the Court on Defendant's motion to dismiss. For the reasons set forth below, that motion is granted.

**BACKGROUND**

Ambassador Press, Inc. ("Ambassador") is a Minneapolis-based commercial printing company. Durst Image Technology U.S., LLC ("Durst") sells large format commercial printers that are manufactured by its affiliate company in Italy. In March 2013, Ambassador began communicating with Durst about purchasing a Durst Rho 1012 printer and a service plan. Durst touted both the printer and its service plan, but Ambassador expressed concern about the cost of replacing print heads on the printer after the two-year warranty period expired. In apparent response to those concerns, a Durst employee named David Gleiter made the following claims in an email to Ambassador on May 15, 2013:

1.  The cost of replacement heads was $12,990.

2.  Durst printers "have had a low failure rate of heads out of warranty."

1

3. For printers with more than one year in service, one unit had no print head replacements, two units had one replacement, and three units had two replacements.

4. Durst identified one unit that, at the end of two years in service, had required six print head replacements – two of which were due to mechanical failure, while the others were due to "poor cleaning habits." Gleiter stated, "This was the worst case scenario that I could find."

ECF No. 16-2. Shortly after receiving Durst's May 15 email, Ambassador's employees visited Durst's offices in Austria. During that visit, Gleiter allegedly acknowledged that Durst print heads were substantially more expensive than those of its competitors, but noted that they were of higher quality and that they rarely failed.

Negotiations continued. On June 30, 2013, Harold Engle from Ambassador emailed Gleiter from Durst to say, "The price per head scares us. What is the life expectancy per head?" ECF No. 16-1. Engle asked if Durst would put the life expectancy response in writing. *Id.* Gleiter responded on July 1 and stated:

> We have some customers with many years of operation without head replacement and others with minor but varying degree of head replacements mostly due to preventative maintenance procedures and in some cases poor operator practices (all data concerning head strike issues etc. are maintained in a data file that the owner and Durst can access and evaluate to identify if the operators are following best practices, each instance of an event is both date and time 2 stamped along with every print that is made, time to print, ink used, etc.).

*Id.*

Throughout the negotiations, Ambassador also voiced concerns about the printer's speed. In response to those concerns, Durst allegedly made several representations, including: an April 12, 2013 email in which Gleiter indicated that the Rho 1012 printer would be at least 50 percent faster than Ambassador's current printer; a chart sent by

Gleiter on May 13, 2013 with specific speed data that the printer would achieve; a document listing the expected output of the printer that Durst delivered to Ambassador on May 14, 2013; and a June 26, 2013 email from Gleiter indicating that Durst had made improvements that would result in even higher speed.

On July 12, 2013, Ambassador purchased a Durst 1012 printer, a service plan, and a two-year warranty. Ambassador alleges that it would not have made this purchase but for Durst's representations about the printer's reliability and speed. According to Ambassador, the printer that it purchased from Durst never functioned as promised. Specifically, Ambassador alleges that the printer has thus far required 54 replacement print heads, only 11 of which were covered by warranty. Ambassador claims to have paid over $260,000 for the 43 heads that failed after the warranty expired. Ambassador also alleges that in March 2017 Durst falsely claimed that only 19 heads had been replaced by that point in time, when in fact the actual number was 28.

Ambassador maintains that its damages are not limited to the cost of the replacement print heads. It claims additional damages stemming from: overheating and failing ink, improperly functioning feed rollers, multiple belt replacements, inconsistent banding issues, software issues, map failure, and encoder and oiler issues. Ambassador claims that these various problems have had a "devastating impact" on its business because the printer is often out of commission or underperforming, leading to increased labor costs, shipping costs (to offset the delays caused by the printer), and job losses. All told, these issues have resulted in millions of dollars in damages, according to Ambassador's complaint.

In September 2017, Ambassador sued Durst in Minnesota state court, asserting claims for common law fraud and consumer fraud. Durst removed the case to federal court and moved to dismiss the complaint. Following a hearing on that motion in February 2018, this Court dismissed the consumer fraud claim and took the common law fraud claim under advisement. The next month, Ambassador sought and received permission to amend its complaint. Ambassador's amended complaint reasserts the claim for common law fraud. Durst now moves to dismiss the amended complaint for failure to state a claim.

## LEGAL STANDARD

Under Rule 12(b)(6)of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555 (1955)). Plausibility is assessed by "draw[ing] on . . . judicial experience and common sense." *Id*. at 679. Moreover, courts must "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp*., 592 F.3d 893, 896 n.4 (8th Cir. 2010).

## DISCUSSION

Ambassador asserts a single cause of action for fraud. For the reasons set forth below, Durst's motion to dismiss that claim is granted.

### A.

Under Minnesota law, a plaintiff claiming fraud must establish: "(1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce action in reliance thereon; (4) that the representation caused action in reliance thereon; and (5) pecuniary damages as a result of the reliance." *U.S. Bank N.A. v. Cold Spring Granite Co.,* 802 N.W.2d 363, 373 (Minn. 2011).

Fraud claims are subject to the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010). Under those requirements, Plaintiffs must plead the "time, place, and content" of the fraud and "the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1070 (8th Cir. 2016). This heightened level of detail "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003).

**B.**

Ambassador's fraud claim fails to survive Durst's motion for two reasons. First, Ambassador has not set forth sufficiently plausible allegations that Durst's representations regarding its printers were, in fact, false. Paragraphs 8 and 10 of Ambassador's complaint list a series of statements that, it contends, were misrepresentations about the Rho 1012's performance and reliability. Ambassador argues that those claims were false based on information and belief. Compl. ¶ 12. But "[a]llegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity requirement." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783–84 (8th Cir. 2009); *see also* Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1298 (3d ed. 2004); James Wm. Moore et al., Moore's Federal Practice § 9.03[1][g] (3d ed. 1997). Such allegations may be pleaded on information and belief only when "the facts constituting the fraud are peculiarly within the opposing party's knowledge." *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 668 (8th Cir. 2001).

Here, however, Ambassador does not – nor, perhaps could it – assert that the facts constituting fraud were peculiarly within Durst's knowledge or control. Instead, Ambassador's argument appears to be that Durst's representations about its printer performance and reliability *must have been* false because Ambassador's printer performed so poorly. For example, Ambassador zeroes in on Gleiter's claim, in the May 15 email, that the "worst case scenario" he could find in his review of historical performance data was a printer that required six replacement heads at the end of the two-year warranty

6

period.[1] Pl.'s Resp. at 16. But rather than providing factual content showing that Gleiter's summary of past printers was false, Ambassador merely asserts that it was false based on its own experience with its own printer. *See* Pl.'s Resp. at 7 ("Based on its experience . . . Ambassador realize[d] Durst's representations were false."). Even if this account of its own experiences is true, however, it merely establishes that Ambassador's printer fell short of expectations, not that Durst made false representations about how its printers normally perform. Without more, these unsubstantiated assertions are not enough to make a plausible fraud claim. *See Commercial Prop. Invs. Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir.1995) ("Because one of the main purposes of [Rule 9(b)] is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." (internal citations omitted)).

Second, even if Ambassador had adequately pleaded that Durst's representations were false, its fraud claim would still fail to survive the motion to dismiss because it does not allege detrimental reliance with sufficient particularity. The Eighth Circuit has held that a party alleging fraud must specify "how [the defendant] intended plaintiffs to act in reliance on each of the alleged misrepresentations, the nature of plaintiffs' justifiable reliance on each misrepresentation, and the damage resulting from such reliance." *Allison v. Security Ben. Life Ins. Co.*, 980 F.2d 1213, 1216 (8th Cir. 1992); *see also Evans v.*

---

[1] For the purposes of analysis, the Court accepts Ambassador's interpretation of Durst's claims as describing the performance of printers both during and after the warranty period. *See* Pl.'s Resp. at 15.

*Pearson Enterprises, Inc*., 434 F.3d 839, 852–53 (6th Cir. 2006) ("Conclusory statements of reliance are not sufficient to explain with particularity how [a plaintiff] detrimentally relied on the alleged fraud. . . ."); *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 321–22 (8th Cir. 1997) (affirming dismissal of fraud claims under Rule 9(b) for failure to plead reliance with particularity); *Stumm v. BAC Home Loans Servicing, LP*, 914 F. Supp. 2d 1009, 1013 (D. Minn. 2012). Ambassador's complaint falls short of this standard. Its allegation concerning detrimental reliance is just a single conclusory assertion: "Ambassador would not have purchased the Printer, the Service Plan, or the two-year warranty, but for the Fraudulent Misrepresentations." Compl. ¶ 13. Ambassador does not specify how it relied on each of the three alleged misrepresentations, or even on the misrepresentations in general. Did it turn down competing printer proposals from other companies because of the assurances that Durst provided? Were there specific discussions among Ambassador's decision-makers that show a shift toward purchasing Durst's product after these assurances were made? Under the heightened requirements of Rule 9(b), and as that Rule is applied in *Allison*, Ambassador must do more than just allege that there were misrepresentations and that it relied on them; it must provide plausible factual allegations showing *how* it relied on them to its detriment.

## CONCLUSION

Ambassador's complaint fails to provide sufficiently plausible allegations that Durst made false representations, and it fails to allege with sufficient particularity how it relied on those representations to its detriment. Accordingly, for the reasons set forth above, and

based upon all of the files, records and proceedings herein, IT IS HEREBY ORDERED that:

1.  Defendant's motion to dismiss [ECF No. 40] is GRANTED.

2.  Plaintiff's amended complaint [ECF No. 36] is DISMISSED.


LET JUDGMENT BE ENTERED ACCORDINGLY.



Dated: August 20, 2018                              **s/ Joan N. Ericksen**
                                                    JOAN N. ERICKSEN
                                                    United States District Judge